Tyler B. Ayres, 09200
Daniel Baczynski, 15530
AYRES LAW FIRM
12339 S. 800 East, Suite 101
Draper UT 84020
tyler@ayreslawfirm.com
daniel.ayreslaw@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH GOECKERITZ,<br><br>On behalf of plaintiff and class,<br><br>vs.<br><br>NEWSPAPER AGENCY CORPORATION,<br><br>Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No:<br><br>Judge: |

Plaintiff Joseph Goeckeritz, by and through his attorney, Ayres Law Firm, Tyler Ayres and Daniel Baczynski and for his Complaint against Defendant Newspaper Agency Corporation demands a jury trial and states as follows:

## <u>INTRODUCTION</u>

1. This case is brought on behalf of individuals who have worked as paper carriers for Newspaper Agency Corporation (NAC) in Utah. NAC is a corporation created to provide paper delivery services to several publications in the state. As set forth below, NAC retains tips intended for paper service carries.

1

2.  In addition, NAC has misclassified Plaintiff as an independent contractor, denying Plaintiff those rights and benefits granted by Federal and State law to employees, including the right to deduct uncompensated business expenses such as driving expenses incurred while delivering papers.

3.  Plaintiff brings this action on his own behalf, and on behalf of other similarly situated paper carriers, for violation of the Fair Labor Standards Act (FLSA) (29 U.S.C. § 201) and based upon NAC's violation of the Utah Gratuities Rule, Utah Administrative Rule R610-1-4, and failure to remit to carriers the entire gratuity paid by customers or that customers would otherwise intend to leave for them.

4.  In addition, Plaintiffs bring this action on behalf of other similarly situated paper carriers who have been misclassified as independent contractors and thereby denied those rights and benefits granted by Federal and State law to employees in violation of the Fair Labor Standards Act, 29 U.S.C. § 203 and Utah Code Ann. § 35A-4-204(3).

## JURISDICTION AND VENUE

5.  This court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, codified as 28 U.S.C. § 1332(d)(2), 1453, and 1711-1715. This court also has jurisdiction under the Fair Labor Standards Act (29 U.S.C. § 201).

6.  Venue is proper before this Court because Defendant's labor violations occurred within this District and Defendant transacts business within this District. 28 U.S.C. § 1931.

7.  Defendant is subject to personal jurisdiction because the Defendant has regularly transacted business in the State of Utah.

## PARTIES

8. Plaintiff Joseph Goeckeritz is an adult resident of Salt Lake County, Utah where he worked as a paper carrier for Newspaper Agency Corporation.

9. Defendant Newspaper Agency Corporation is a Corporation headquartered in Salt Lake City, Utah.

## GENERAL ALLEGATIONS

10. Defendant NAC is a company-created subsidiary to Media One, formed to handle delivery of its publications to subscribers.

11. Paper carrying, delivering publications to subscribers, is integral to NAC's business. NAC was created in order to deliver papers for parent company Media One. The paper-carrying service is so essential that NAC employees (including management) will assist with deliveries in order to ensure papers are delivered on time and in the correct manner.

12. Mr. Goeckeritz was a paper carrier. Paper carriers with NAC are paid based on how many papers they are able to deliver.

13. Goeckeritz had no independent latitude to select assignments, solicit additional work from clients for NAC, advertise his services, or endeavor to reduce costs.

14. Paper carriers supply their own vehicle, gas, and rain covers for the papers.

15. NAC provides the facilities required to properly prepare papers for delivery, including the sundry work surfaces, lighting, heating, and other utilities for the facility, upkeep on the facility, etc.

16. The vehicles used by the paper carriers are almost uniformly not "work" vehicles. Rather, they are privately owned and paid for, general purpose vehicles that paper carriers use for non-employment purposes as well as for delivering newspapers.

17. NAC has their paper carriers sign new independent contractor agreements every two years in an attempt to classify their paper carriers as a temporary workforce, and by using the term "independent contractor", to represent to paper carriers that the paper carriers have waived their right to employee status.

18. NAC is intimately involved in the process of paper delivery.

19. NAC establishes the time when a paper carrier may begin to work.

20. NAC dictates paper carrying routes.

21. NAC sets protocols for paper carriers to follow if the paper carrier falls behind on his deliveries.

22. NAC monitors paper carriers to make sure they are in compliance with the requirements of NAC.

23. NAC management trains new paper carriers.

24. NAC directly controls the training of its new paper carriers.

25. Paper carriers have no latitude to perform their tasks in any way other than that which is prescribed by NAC.

26. NAC's involvement includes rules on such minutiae as how to fold and place inserts into the newspaper.

27. NAC reviews the papers prior to a paper carrier leaving the facility for compliance with proper folding and inserting protocol.

28. NAC sets paper carrier hours in as much as they determine times and deadlines for delivery.

29. NAC controls the route and location of where paper carriers perform their work.

30. NAC determines the order in which services are performed and paper carriers must at times give accounting reports to NAC.

31. NAC further treats paper carriers as employees in that NAC provides paper carriers with training, provides wake-up calls to paper carriers, provides paper carriers transportation to work, assists paper carriers with paper delivery, and dispenses disciplinary action for paper carriers.

32. Paper carriers also request and are granted time off by NAC.

33. Paper carriers routinely receive tips for delivering papers.

34. The paper carriers are allowed to retain all tips for the routes they deliver.

35. "Down routes" are those paper routes which do not have a contracted or regular paper carrier.

36. Other paper carriers or NAC employees are assigned by NAC to deliver the paper route in lieu of a regular paper carrier.

37. It is reasonable to conclude that customers intend their tips be distributed to the paper carrier or NAC employee who performed the "down route".

38. The paper carrier or NAC employee who performed the down route does not receive the tip for the down route.

39. NAC keeps all tips received on down routes.

### FIRST CLAIM FOR RELIEF
*Violation of FLSA and Utah Code Ann. § 35A-4-103*

40. Plaintiff incorporates by reference all preceding paragraphs.

41. The FLSA and Utah Code Ann. § 35A-4-103 provides a broad definition of who is considered an employee and who is considered an independent contractor.

42. NAC is an employer under the meaning of the statute.

43. Plaintiff is an employee as defined by FLSA and Utah Statute.

44. NAC misclassified Plaintiff as an independent contractor.

45. Employees benefit from significant rights and protections under the FLSA and Utah Statute, including the Employment Security Act and Worker's Compensation Act.

46. As an independent contractor Plaintiff was deprived of those rights and benefits granted by Federal and State law to employees, including the right to deduct uncompensated reasonable business expenses from his taxable income. (IR-2015-137).

47. Plaintiff was unable to deduct uncompensated reasonable business expenses for gas mileage and vehicle maintenance incurred by Plaintiff's paper carrying services because NAC labeled Plaintiff as an independent contractor.

48. By failing to properly classify Plaintiff as an employee, NAC has violated FLSA and the Utah Statute.

6

## SECOND CLAIM FOR RELIEF
### *Violation of Utah Minimum Wage Act and Utah Administrative Code (R610-1-4)*

49. Plaintiff incorporates by reference all preceding paragraphs.

50. Utah Administrative Code R610-1-4 states: "All tips shall be retained by the employee receiving the tips."

51. Utah Administrative Code R610-1-4 was enacted under the authority of Section 34-40-105 (Utah Minimum Wage Act).

52. Paper carriers routinely and customarily receive tips for delivering papers.

53. Tips are processed through NAC, which distributes the tips back to the paper carrier responsible for the tipped paper route.

54. On a "down route", other paper carriers or NAC employees will perform the paper route in lieu of a regular paper carrier.

55. Plaintiff would service "down routes".

56. NAC processes tips for the down routes.

57. It is reasonable to conclude that customers intend their tips be distributed to the paper carrier or NAC employee who performed the "down route".

58. Instead of distributing the tips to the paper carrier or employee who performed the down route, NAC retains the tip for itself.

59. By retaining the tip, NAC has directly and proximately caused financial harm to Plaintiff and similarly situated paper carriers and NAC employees.

60. By retaining the tip for itself instead of distributing the tip to the respective employee, NAC has violated the Utah Minimum Wage Act and Utah Administrative Code (R610-1-4).

**THIRD CLAIM FOR RELIEF**
*Conversion*

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Utah Administrative Code R610-1-4 states: "All tips shall be retained by the employee receiving the tips."

63. Utah Administrative Code R610-1-4 was enacted under the authority of Section 34-40-105 (Utah Minimum Wage Act).

64. Paper carriers routinely and customarily receive tips for delivering papers.

65. Tips are processed through NAC, which distributes the tips back to the paper carrier responsible for the tipped paper route.

66. On a "down route", other paper carriers or NAC employees will perform the paper route in lieu of a regular paper carrier.

67. Plaintiff would service "down routes".

68. NAC processes tips for the down routes.

69. Paper carriers or NAC employees who serviced "down routes" have a legal right to "down route" tips.

70. NAC intentionally interfered with paper carriers or NAC employees' rights to "down route" tips by retaining "down route" tips.

8

71. By retaining the tips, NAC deprived paper carriers and NAC employees from "down route" tips.

72. NAC's interference directly and proximately resulted in financial harm to Plaintiff and similarly situated paper carriers and NAC employees who serviced "down routes".

### FOURTH CLAIM FOR RELIEF
*Unjust Enrichment*

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Utah Administrative Code R610-1-4 states: "All tips shall be retained by the employee receiving the tips."

75.  Utah Administrative Code R610-1-4 was enacted under the authority of Section 34-40-105 (Utah Minimum Wage Act).

76. Paper carriers routinely and customarily receive tips for delivering papers.

77. Tips are processed through NAC, which distributes the tips back to the paper carrier responsible for the tipped paper route.

78. On a "down route", other paper carriers or NAC employees will perform the paper route in lieu of a regular paper carrier.

79. Plaintiff would service "down routes".

80. NAC processes tips for the down routes.

81. Paper carriers or NAC employees who serviced "down routes" have a legal right to "down route" tips.

82. NAC has received the benefit of the tips intended for the paper carriers.

9

83. NAC improperly and inequitably retained the benefit of tips intended for Plaintiff and similarly situated paper carriers and NAC employees performing paper carrying services.

84. By retaining tips, NAC directly caused financial harm onto Plaintiff and similarly situated paper carriers and NAC employees who serviced "down routes".

## CLASS ALLEGATIONS

85. Plaintiff brings these claims on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

86. The class consists of (a) all individuals who entered into an independent contract or employment agreement with NAC, (b) performed paper carrying services for NAC, (c) incurred costs by using a private vehicle to carry papers for NAC, (d) were denied the benefit of employee classification due to their misclassification as independent contractors, and (e) who performed paper carrying services within the last six (6) years.

87. A subclass consists of (a) all individuals who performed paper carrying services for NAC (b) on a tipped down route (c) within the last six (6) years.

88. On information and belief, the class is so numerous that joinder of all members is not practicable. The information relating to the precise number of persons who fall within the class is within the control of Defendant.

89. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether paper carriers should be classified as employees rather than independent contractors, (b) whether NAC violated FLSA and

10

Utah Code Ann. § 35A-4-204(3*)* by labeling paper carriers as independent contractors, and (c) whether NAC violated the Utah Minimum Wage Act by retaining tips provided for "down routes".

90. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

91. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions.

92. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible;

    b.  Members of the class are likely to be unaware of their rights;

    c.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation; and

    d.  The damages suffered by individual members of the class may be relatively small, thereby making individual litigation practically impossible.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against defendant as follows:

(1)      actual damages in an amount in accordance with the proof at the time of trial;

(2)      for physical pain and suffering, emotional distress, mental anguish, sleeplessness, impaired earning capacity, and loss of enjoyment of life and/or any other damages allowed by law;

(3)      for punitive and exemplary damages in an amount to be determined by jury;

(4)      for interest allowed by law;

(5)     for costs;

(6)     for reasonable attorney fees, and

(7)     for other such relief as this court finds just and proper.

DATED this 4th day of April, 2016

AYRES LAW FIRM


/s/ Daniel Baczynski_____
Daniel Baczynski
Attorneys for Plaintiff